In re VANTAGE PETROLEUM
CORP., Debtor.

Bankruptcy No. 882–91962–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Nov. 23, 1983.

Thomas Fitzpatrick, New York City, for
Future Positions Corp.

Squadron, Ellenoff, Plesent & Lehrer,
New York City, Sp. Counsel to the Trus-
tee, by Jonathan D. Gelberg, New York
City, of counsel.

Harvis & Zeichner, Abraham Backenroth,
New York City, counsel to the Trustee.

ROBERT J. HALL, Bankruptcy Judge.

Future Positions Corp. (Future Positions)
moves this Court to quash a subpoena duces
tecum which was served upon it by the
Trustee of Vantage Petroleum Corp. (Van-
tage), on or about August 3, 1983. The
subpoena in question demanded the produc-
tion of the following documents from Fu-
ture Positions:

1. All employee files
2. All corporate documents, including, but
   not limited to Certificate of Incorpora-
   tion, By Laws, record of shareholders,
   listing of officers and directors.
3. All documents relating or referring to
   Vantage Petroleum Corporation (New
   York and New Jersey), Galion Holding
   Co., Houston Holdings, San Souci Corp.,
   S & L Gasoline Corp. and/or C & K
   Petroleum Transporters Inc.

The sole ground advanced by Future Po-
sitions in favor of its motion is that the
Trustee has made no showing that the docu-
ments requested have any relevance to the
financial affairs of Vantage. The movant
has asserted through the Affidavit of its
attorney, that the Trustee's subpoena can
withstand a motion to quash, if the Trustee
can demonstrate that there is reason to
believe assets of Vantage were diverted
into Future Positions. Without comment-
ing upon the catch-22 element of this posi-
tion, i.e., that the Trustee must demonstrate
the diversion of assets in order to investi-
gate whether a diversion in fact took place,
the Court finds that the documents request-
ed sufficiently relate to "the acts, conduct,
or property or to the liabilities and financial
condition of the debtor, or to any matter
which may affect the administration of the
debtor's estate." Bankruptcy Rule 2004
(formerly Rule 205).

A trustee in bankruptcy is under an affirmative duty to investigate the debtor's affairs in order to discover and recover assets for the benefit of creditors of the debtor. Under Rule 2004 and its precursors, it has been well-established that the scope of such an investigation is broad. The exploration can be in the nature of a fishing expedition. *Chereton v. United States,* 286 F.2d 409, 413 (6th Cir.), cert. denied 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 584 (1961) (citing *In re Foerst,* 93 F. 190 (S.D.N.Y.1899)); *Freeman v. Seligson,* 405 F.2d 1326, 1333 (D.C.Cir.1968). *Cf. Sachs v. Hadden,* 173 F.2d 929, 931 (2d Cir.1949) (The examination before a master appointed by the Court may be "exploratory and groping; and it may be as searching to him as appears proper.").

The imprecise standard of relevancy in Rule 2004 requires the Court to exercise its discretion and balance the competing interests presented in a motion to quash a subpoena in a bankruptcy context. The Fifth Circuit has stated:

> In determining the reasonableness of the requirements of a challenged subpoena the court is called upon to balance the important function of the trustee to expose chicanery and double-dealing against the incalculably precious right of the citizen to be let alone, and to hold his writings inviolate from alien eyes in the absence of evidence that the material sought is relevant to the bankrupt's acts or property, and that, under the law, there is justification for the invasion of the individual's treasured privacy.

*Herron v. Blackford,* 264 F.2d 723, 725 (5th Cir.1959). In conducting this balancing test, courts have indicated that the trustee's latitude should be greater where there has been a showing that the debtor has engaged in questionable conduct. *See In re Foerst,* 93 F. 190, 191 (S.D.N.Y.1899) ("Where questionable proceedings have been disclosed, greater latitude in the prosecution of inquiries should be allowed ...."); *Marx v.*

*Chase Nat. Bank,* 117 F.2d 800, 802 (2d Cir.1941) (Where the affairs of the debtor corporation, its sole stockholder, and its subsidiaries were inextricably commingled, the trustee is entitled to examine anyone who had dealings with the stockholder or any of his companies, because it would be "impossible otherwise to unravel such a tangled corporate skein.").

In determining whether the Trustee's request is abusive or unnecessary, the Court must necessarily examine the connections, if any, between the affected party and the financial affairs of the debtor. The following are the uncontroverted facts concerning such connection:

1. Future positions and Vantage are both in the business of supplying gas stations with petroleum products.

2. The first president of Future Positions and the present sales manager is a former employee of Vantage, and is a close friend of Lawrence Iorizzo, the former chief executive officer of Vantage.

3. Future Positions was incorporated on or about the same date that S & L Gasoline Corp. was formed. When Future Positions was incorporated, Mr. Lombardo was its president. This Court has already determined that S & L Corp. was the recipient of a fraudulent transfer of assets from Vantage while Mr. Lombardo was president of S & L Corp. Furthermore, during the trial involving S & L Corp., Mr. Lombardo incredibly testified that he was currently the sales manager of Future Positions, receiving fifty thousand dollars a year in salary, but he could not recall who were the owners or the directors of Future Positions.[1]

5. Many, if not all, of the employees of Future Positions are former employees of Vantage.

6. Future Positions has paid the legal fees of Lawrence and Cheryl Iorizzo, in the sum of $35,000, in connection with their individual bankruptcy proceeding.

---

1. The pertinent portion of the trial record from July 29, 1983 is appended at the end of the decision. See appendix

Upon careful consideration of these facts, and judicial notice of the obstacles faced by the Trustee in his investigation of the assets of Vantage,[2] this Court, in the exercise of its sound discretion, must rule that the Trustee is entitled to examination of the requested documents. The movants have not shown that such production would be oppressive or burdensome. Furthermore, the facts listed above, together with the prior proceedings before this Court, indicate much more than a mere possibility exists that the Trustee will gain information concerning the debtor's financial affairs.

The Court having determined that the documents requested sufficiently related to the debtor or the administration of its estate, hereby denies the motion to quash.

So Ordered.

## APPENDIX

### LOMBARDO—CROSS

Q  Are you an officer of the company?

A  No, I am not.

Q  Have you ever been an officer of the company?

A  Yes.

Q  And what was your office when you were an officer?

A  President.

Q  When did that change?

A  A few months ago.

Q  How come?

MR. GREEN: Your Honor, I object to these inquiries. I can't see any relevance of the inquiries of Mr. Lombardo's current occupation at Future Positions. This was all subsequent to the transaction, so I fail to see why it would be relevant.

MS COHEN: Mr. Lombardo has testified to substantial losses from the operation of a gas station, and I'm trying to inquire as to his other sources of income in order to shed some light as to the validity of the testimony regarding the losses at the gas station.

THE COURT: Covering the same period of time?

MS COHEN: Well, I will ask him that.

### BY MS COHEN: [CONTINUING]

Q  You have been operating S & L or operating the gasoline station through S & L at the same time you have been working for Future Positions, is that correct?

A  For a period of time.

MS COHEN: So, it is the same period of time, Your Honor.

THE WITNESS: No, it's not the same period of time.

Q  When did you start working for Future Positions?

A  I think it was January of '83.

Q  In between September of '82 and January of '83, what were you doing?

A  I don't believe anything.

Q  You were doing work at the gas station?

A  Yes.

Q  And subsequent to January of '83, have you been working at the gas station?

A  ·Repeat that question?

Q  After January of '83, have you been working at the gas station?

A  Occasionally.

Q  Are you spending more time at Future Positions?

A  Well, I would say half and half.

Q  Half and half? On a weekly basis you spend fifty percent of your time engaged at Future Positions and fifty percent of your time working on the operation of the gasoline station?

A  I would say so.

Q  And let me ask you what the business of Future Positions is?

A  Wholesale gasoline.

Q  Sells gasoline?

---

2.  *See In re Lawrence S. and Cheryl Iorizzo,* 35 B.R. 465, 467 (Bkrtcy.E.D.N.Y.1983).

A  Sure.

Q  To gasoline stations?

A  No, to wholesale.

Q  Whom do they sell to?

A  Wholesalers.

Q  And the wholesalers would sell to gasoline stations?

A  Right.

Q  Do you own any interest in Future Positions?

A  No, I don't.

Q  Do you know who the owners of Future Positions are?

A  No, I don't.

Q  And what is your salary as sales manager for Future Positions?

A  Approximately fifty thousand dollars a year.

Q  That's fifty thousand for what is essentially half of your time, is that correct?

A  Yes.

Q  Whom do you report to at Future Positions?

A  To whom do I what?

Q  Is there anyone who supervises you?

A  No.

Q  In charge of you?

A  No.

Q  Who decides on your salary?

MR. GREEN: Your Honor, I would think this is particularly irrelevant if we are going to find the source.

THE COURT: A question of credibility. I will allow it.

Q  Who decides on your salary, Mr. Lombardo?

A  It came up from the Board of Directors.

Q  Who are the directors of Future Positions?

A  I don't recall.

Q  You don't recall?

A  No, I don't.

Q  Do you remember who told you what your salary would be?

A  No, I don't.

Q  Was there any negotiations about your salary? Did someone say, "We will give you fifty thousand dollars."?

A  I don't recall.

Q  Are you taking any sums out in the form of salary or