**In re James Keith HAMMOND, Debtor.**

**BANK ONE, COLUMBUS,**
**N.A., Appellant,**

v.

**James Keith HAMMOND, Appellee.**

**No. C2–91–913.**
**Bankruptcy No. C2–91–00504.**

United States District Court,
S.D. Ohio, E.D.

May 6, 1992.

Nora E. Jones, Schottenstein Zox & Dunn, Columbus, Ohio, for appellant.

Pamela N. Maggied, Columbus, Ohio, for appellee.

## OPINION AND ORDER

GRAHAM, District Judge.

Bank One, Columbus, N.A. ("Bank One") appeals from an order of the United States

Bankruptcy Court denying its request to examine the debtor, James Keith Hammond, pursuant to Bankr.R. 2004 and granting Hammond's motion to quash the examination. The decision of the bankruptcy court is reported at 131 B.R. 78 (Bankr. S.D. Ohio 1991). The issue presented on appeal is whether the bankruptcy court abused its discretion in concluding that Bank One failed to show good cause for the examination. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). For the following reasons the decision of the bankruptcy court is reversed.

## I.

On January 23, 1991 Hammond filed a petition for relief under Chapter 7 of the Bankruptcy Code. Hammond owed Bank One approximately $2,000 for cash advances he received on two separate credit cards. Hammond applied for and received the first Bank One credit card in 1988. He obtained a $1,000 cash advance on the first card in December 1989. (Tr. p. 9). Bank One sent Hammond a second credit card sometime after 1988 even though Hammond had never requested or applied for it. Hammond obtained a $1,000 cash advance using the second Bank One credit card in May 1990. (Tr. p. 12). Some repayment was made on the first cash advance; no repayment was made on the second cash advance.

On February 22, 1991 Hammond appeared at a meeting of creditors held pursuant to 11 U.S.C. § 341. Counsel for Bank One was also present and questioned Hammond. Although this questioning was not interrupted, Bank One's counsel later testified that he kept the questioning brief in order to avoid backing up the docket. (Tr. p. 66). Hammond testified at the meeting of creditors that during the six-month period preceding his petition, he had been employed as a delivery driver and had a monthly income of $2,403. He also testified that prior to becoming a delivery driver he had been a full-time realtor for one and one-half years. He stated that he had earned no net income during that one and one-half year period. Hammond further

testified that he could not recall specifically what he used the cash advances for, but indicated that he had used them to pay both business and personal expenses. Hammond also indicated at the meeting of creditors that at the time he left the real estate business in June 1990 he had twelve pending listings from which he hoped to be able to repay his debts. (*See* Tr. pp. 28–31, 40–41, 53).

As of the time of the meeting of creditors, Bank One's counsel had not received the statement of financial affairs, schedules, or other documents filed by Hammond as part of his bankruptcy case. (Tr. pp. 39, 60–61). He also had not received a copy of Bank One's actual records concerning Hammond's two credit card accounts. (Tr. p. 57). Bank One's counsel was, however, in possession of an outline provided by Bank One which contained the following information for each account: the date the account was opened; the credit limits; the total outstanding balance; the total amount outstanding for cash advances; the total amount outstanding for purchases; the date of last use; and the date of last payment. (Tr. pp. 57–58, 60–61, 65). He also had received a summary of Hammond's bankruptcy statements and schedules. The summary indicated that Hammond had acquired twenty-two credit cards on which he owed more than $40,000. (Tr. p. 39). The summary also stated that in his statement of financial affairs, Hammond had disclosed no net income for 1989 and 1990. (Tr. p. 41). Moreover, the summary disclosed that as of the date of the filing of his Chapter 7 petition, Hammond's monthly income was $2,403, while his monthly expenses, excluding payments on credit cards, were $2,383. (Tr. p. 39).

Immediately after the meeting of creditors, Bank One's counsel approached counsel for Hammond to ask whether Hammond would be interested in reaffirming his debt to Bank One. Hammond's attorney answered that Hammond was not interested. (Tr. pp. 59–60). On February 27, 1991, Bank One's counsel sent a letter to Hammond's counsel, expressing Bank One's belief that Hammond may have "in-

tentionally incurred credit card indebtedness beyond his ability to repay that indebtedness." (Exhibit 9, attachment). The letter further stated that Bank One would be willing to settle the matter if Hammond would sign an agreement essentially reaffirming $500 of the $2,135.94 debt. The letter concluded by stating that if Hammond chose not to sign the reaffirmation agreement, Bank One would request a Rule 2004 examination. Counsel for Hammond did not respond to this letter. On March 6, 1991, Bank One filed a motion requesting the bankruptcy court to order Hammond to submit to a Rule 2004 examination. (Exhibit 4). Bank One requested that Hammond be ordered to produce:

> All documents and things describing, evidencing, relating to, or in any way relevant to the following:
> (1) Source, nature and amount of all gross income (earned and unearned) of Debtor(s) from January, 1988 through December, 1990;
> (2) Nature and amount of all expenses of and disbursements by Debtor(s) and Debtor(s)' household and business ventures from January, 1988 through December, 1990;
> (3) Paycheck stubs from January, 1988 through December, 1990;
> (4) 1988, 1989 and 1990 Federal, state, and local income tax returns including W–2s, schedules, and other attachments;
> (5) All checkbook registers, cancelled checks, monthly (or other) statements, passbooks, and certificates of deposit covering the period January, 1988 through December, 1990;
> (6) Itemizations and any documents related to use of cash advances obtained on Debtor(s)' Bank One credit card(s).

(Exhibit 4). The bankruptcy court granted Bank One's motion *ex parte*. (Exhibit 5). Hammond then moved to quash the examination on the ground that the request was "unnecessary, burdensome, and abusive, and harassing considering the amount at issue." (Exhibit 6, p. 4).

The bankruptcy court held a hearing on Hammond's motion to quash on June 3, 1991. At the hearing, Bank One voluntarily offered to limit the scope of its document production request by eliminating requests nos. 1 and 3, by withdrawing its request for any documents from 1988 except for Hammond's tax return for that year, and by agreeing that production of Hammond's checkbook registers and checks would satisfy request no. 2. (Tr. pp. 73–74). On August 26, 1991 the bankruptcy court entered an opinion and order granting Hammond's motion to quash and, thus, denying Bank One the opportunity to examine Hammond pursuant to Bankr.R. 2004. It is from this order that Bank One appeals.

## II.

Bankr.R. 2004 provides that "[o]n motion of any party in interest, the court *may* order the examination of any entity." (emphasis added). "May" connotes discretion. Accordingly, district courts reviewing bankruptcy court decisions under Rule 2004 have held that the proper standard of review is the abuse of discretion standard. *See Charters International Co.*, 1990 Westlaw 81764 (D.Kan. May 21, 1990); *European–American Bank & Trust Co. v. GATX Aircraft Corp. (In re Hawley Mining Corp.)*, 47 B.R. 392 (S.D.W.Va.1984).

Bank One argues in favor of the application of the *de novo* standard of review; Hammond argues in favor of the application of the clearly erroneous standard. The Court, however, concludes, as did the courts in *Charters International* and *GATX*, that a unitary abuse of discretion standard should be applied in reviewing the bankruptcy court's decision. The decision to grant or deny a request for a Rule 2004 examination is committed to the discretion of the bankruptcy court and requires the determination of closely intertwined factual and legal issues. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (holding that a unitary abuse of discretion standard is appropriate when an appellate court is reviewing a district court's decision to impose sanctions under Fed.R.Civ.P. 11).

■ Under the abuse of discretion standard, the decision of the bankruptcy court will be reversed only if this Court has "a definite and firm conviction that the [bankruptcy] court ... committed a clear error of judgment in the conclusion it reached...." *McBee v. Bomar*, 296 F.2d 235, 237 (6th Cir.1961); *see also In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Yung v. Raymark Industries*, 789 F.2d 397, 400 (6th Cir.1986). A "clear error of judgment" has been made if the conclusion is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter*, 110 S.Ct. at 2461; *McGhee v. Sanilac County*, 934 F.2d 89, 92 (6th Cir.1991).

### III.

The issue presented on appeal is whether the bankruptcy court abused its discretion in granting Hammond's motion to quash the Rule 2004 examination requested by Bank One. Rule 2004(b) provides as follows:

> The examination of an entity under this rule or of the debtor under section 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

Hence, the scope of a Rule 2004 examination is broad. Indeed, some have compared it to a "fishing expedition." *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D.Mass.1983); *see also 8 Collier on Bankruptcy* para. 2004.04[1] (15th ed. 1991). The primary purpose of a Rule 2004 examination is to permit the trustee to ascertain the extent and location of the estate's assets. However, an examination may be conducted by "any party in interest," including a creditor. Rule 2004(a).

■ If the debtor challenges the right of the examiner to conduct a Rule 2004 examination, then the examiner has the burden of establishing that "good cause" exists for the taking of the examination.

*Freeman v. Seligson*, 405 F.2d 1326, 1336 (D.C.Cir.1968). Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests. *See Id.* (quoting *Boeing Airplane Co. v. Coggeshall*, 280 F.2d 654, 659 (D.C.Cir.1960); *see generally* 4A *Moore's Federal Practice* para. 34.08[3] (2d ed.1992). As applicable to this case, a creditor has established good cause if, based upon information readily available to it from sources other than a Rule 2004 examination, a reasonable bankruptcy attorney could conclude that a Rule 2004 examination of the debtor might establish grounds for a challenge to the debtor's right to discharge. The sources of information readily available to the creditor may include the debtor's own records, a reasonable inquiry at the creditor's meeting, the bankruptcy court's files, and information gained through informal discovery.

■ After determining that Rule 2004 examination is necessary for the protection of the examiner's legitimate interests, the bankruptcy court must balance the examiner's interests against the debtor's interest in avoiding the cost and burden of disclosure. *In re Drexel Burnham Lambert, Inc.*, 123 B.R. 702, 712 (Bankr.S.D.N.Y. 1991); *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr.S.D.N.Y.1987). The debtor's interest may in some cases warrant a limitation of the scope of the proposed examination. In rare cases, the debtor's interest may so greatly outweigh those of the examiner that the examination should be quashed.

■ A debtor may also avoid a Rule 2004 examination by establishing that the examination is being sought for "purposes of abuse or harassment." *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr.E.D.Wis.1984); 8 *Collier on Bankruptcy* para.2004.04[1] (15th ed. 1991).

### IV.

As will be discussed below, the bankruptcy court's decision was based upon erroneous conclusions of law. Furthermore, there is not sufficient evidence in the record to support its conclusion that Bank

One's primary purpose in requesting the examination was for abuse or harassment of the debtor. For these reasons, the bankruptcy court's decision must be reversed as an abuse of discretion. *Cooter*, 110 S.Ct. at 2461; *McGhee*, 934 F.2d at 92.

## A.

■ In granting Hammond's motion to quash, the bankruptcy court was guided by an erroneous view of Hammond's legitimate interests. The bankruptcy court stated that a debtor in bankruptcy has an "incalculably precious right ... to be let alone." *In re Hammond*, 131 B.R. at 83 (quoting *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (E.D.N.Y.1983)). The right to be let alone was described by the court in *In re Vantage* as a right "to hold [one's] writings inviolate from alien eyes." 34 B.R. at 651. Nevertheless, the court in *In re Vantage* did not purport to describe the rights of a debtor. Rather, in *In re Vantage*, the proposed examinee was a business which had financial dealings with the debtor. *Id.* No court, other than the bankruptcy court in the case at bar, has ever held that a debtor in bankruptcy has such a right.

Recognizing such a right in the debtor contradicts one of the fundamental concepts of bankruptcy law—namely, the concept that full and adequate disclosure is the "price" the debtor in bankruptcy pays for the benefit of discharge. *In re Sinder*, 102 B.R. 978, 988–89 (Bankr.S.D.Ohio 1989); *see also In re Halliwell*, 130 B.R. 508, 509 (Bankr.S.D. Ohio 1991). Because of this important policy favoring full disclosure, a debtor in bankruptcy does not have the same right to be let alone that non-debtors have. Therefore, the bankruptcy court erred in concluding that Hammond, a debtor in bankruptcy, had an "incalculably precious right ... to be let alone."

## B.

■ The bankruptcy court's overstatement of Hammond's interests apparently led it to impose heavy burdens on Bank One in its attempt to establish good cause. The bankruptcy court conceded that "good

cause *ordinarily* may be shown if the examination and requested documents are necessary to establish the claim of the party seeking the examination or the document production, or that denial of such request would cause it undue hardship or injustice." *In re Hammond*, 131 B.R. at 82–83 (emphasis added). However, the bankruptcy court rejected this "ordinary" test and created a new standard of good cause for creditors seeking Rule 2004 examinations of debtors. According to this new standard, a creditor must establish that there are "extraordinary circumstances" justifying examination of the debtor beyond the meeting of creditors in order to show good cause exists for a Rule 2004 examination. *In re Hammond*, 131 B.R. at 84. Absent a showing of "extraordinary circumstances," the bankruptcy court would not allow any discovery by a creditor after the meeting of creditors and before the filing of a complaint against the debtor. *Id.*

Pursuant to 11 U.S.C. § 341, a meeting of creditors is held after the order for relief has been filed in the bankruptcy court. At the meeting, the debtor is examined under oath by his or her creditors. Bankr.Rule 2003(b)(1). Apparently, the bankruptcy court reasoned that, because a creditor has had an opportunity to examine the debtor at the meeting of creditors, further examination under Rule 2004 is unnecessary—at least, absent "extraordinary circumstances."

The bankruptcy court's reasoning reflects a misunderstanding of the nature of the meeting of creditors. While a creditor does have an opportunity to question a debtor in regard to the debtor's right to discharge at the meeting of creditors, such questioning must necessarily be brief. The need for brevity has been explained as follows:

> A creditor should not abuse the right to examine the debtor [at the meeting of creditors]. [Meetings of creditors] are not to be considered as substitutes for examinations under Rule 2004. A Rule 2004 examination allows a creditor great latitude to examine the debtor at length

regarding almost any issue concerning the debtor's case. If a creditor attempts to go into great detail at a meeting of creditors, the result may well be that other creditors will not have adequate opportunities to ask relevant questions and other meetings scheduled on the same docket, for other cases will be unavoidably delayed.

8 *Collier on Bankruptcy* para. 2003.04[c] (15th ed. 1991). Because of this need for brevity at the meeting of creditors, the fact that a creditor has had an opportunity to question the debtor at the meeting is normally no substitute for a Rule 2004 examination.

The bankruptcy court's conclusion on this point is all the more surprising considering the remarks the bankruptcy court made on this subject at the conclusion of the hearing:

> As a practical matter, you know more accurately than I do at this point, Ms. Jones, but when I was in practice now five years ago there were something like five 341 meetings set every half-an-hour, and it is difficult from a practical perspective to continue an examination beyond five, six, seven minutes as to each case.

> Some trustees adopt the position that they will not allow questioning beyond five or ten minutes because, otherwise, they get way off track if you allow questioning of one debtor for half-an-hour, then you're way behind, if you allow questioning for an hour, the trustee will never get through his or her docket.

(Tr. p. 83). Bank One's attorney testified that he felt constrained to keep his questioning short at the § 341 meeting because it was a very busy day and a lot of people were waiting for their turn on the docket. (Tr. p. 66).

The bankruptcy court's reasoning on this standard may also reflect its mistaken view that the debtor in bankruptcy has an incalculably precious right to be let alone. There is no need to impose the heavy burden of an "extraordinary circumstances" test on a creditor seeking a Rule 2004

examination because a debtor in bankruptcy does not enjoy such a right.

For these reasons, the Court concludes that the bankruptcy court erred in imposing the extraordinary circumstances standard.

### C.

In addition to the "extraordinary circumstances" test, the bankruptcy court would require credit card companies—like Bank One, to demonstrate a nexus between the use of the credit card and the alleged fraudulent conduct by producing some strong suggestion or evidence of fraud by the debtor. *In re Hammond,* 131 B.R. at 84. The Court concludes that the bankruptcy court also erred in promulgating this additional requirement.

A credit card company may employ 11 U.S.C. § 523(a)(2)(A) in seeking an exception to discharge. Pursuant to § 523(a)(2)(A), a debt is nondischargeable if it is the result of "false pretenses, a false representation, or actual fraud." A creditor bringing a claim under § 523(a)(2)(A) bears the burden of proving the following:

> [T]he creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of loss.

*In re Phillips,* 804 F.2d 930, 932 (6th Cir. 1986) (citations omitted).

The bankruptcy court's proposed additional requirement would put a credit card company, like Bank One, in a Catch–22 position. In order to establish a claim for nondischargeability under § 523(a)(2)(A), a credit card company must prove all the elements of fraud by a preponderance of the evidence. *Grogan v. Garner,* — U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Section 523(d) provides:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section,

and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

Hence, before filing a claim of nondischargeability, a creditor must determine whether its claim is "substantially justified." 11 U.S.C. § 523(d); *see also* Bankr. Rule 9011. The bankruptcy court acknowledged the legitimacy of creditors' concern regarding § 523(d) liability:

> The Court: Well, I certainly appreciate that kind of concern. I know Ms. Maggied doesn't think it's bona fide here, but we see more than our fair share of complaints seeking a determination of dischargeability which should not have been filed or probably would not have been filed had there been some pre-filing investigation of the debt.

(Tr. p. 87). Bank One's attorney expressed concern about filing a nondischargeability complaint without conducting further pre-filing inquiry. (Tr. pp. 44–45). Thus, a credit card company may in many cases find it necessary to conduct a Rule 2004 examination to determine whether such a claim for dischargeability would be substantially justified. Nevertheless, under the bankruptcy court's additional requirement, a credit card company would not be able to examine the debtor pursuant to Rule 2004 unless it had *already* produced "some strong suggestion or evidence of fraud." *In re Hammond*, 131 B.R. at 84.

The burden of the bankruptcy court's strong showing requirement would effectively render Rule 2004 unavailable to credit card companies. The Court finds that there is no legal basis for such a sweeping rule directed at one class of creditors.

## D.

The Court must also examine the bankruptcy court's finding that "Bank One's primary, if not sole, objective in requesting the examination was to coerce the debtor into reaffirming a portion of the Credit Card Debt." *In re Hammond*, 131 B.R. at 83. For the reasons that follow, this Court has determined that the bankruptcy court's finding on this factual issue was an abuse of discretion.

First, it seems likely that the bankruptcy court's finding on this issue was grounded to some extent on its erroneous view of the law and the debtor's interest in this case. To the extent the factual finding was based upon the bankruptcy court's mistaken view of the law, it constitutes an abuse of discretion.

Second, the evidence is insufficient to support a finding that the examination was requested to abuse or harass Hammond. The conversation between the lawyers after the § 341 meeting and Bank One's letter to Hammond's counsel do not evidence a lack of good faith, or that the purpose of the requested examination was to harass, abuse or "shake loose" money from the debtor. There is nothing wrong with approaching a potential adversary with a settlement offer prior to commencing litigation and/or discovery. Nor is it per se improper to remind someone that potentially expensive or time-consuming discovery may take place if the matter is not settled, in order to help persuade that person to accept or respond to a settlement offer. These are certainly among the factors which must be considered by both sides whenever discussions ensue prior to litigation. If these kinds of discussions did not take place our courts would be flooded by an even greater number of cases. In short, the conversation between Bank One's attorney and debtor's attorney, and the letter sent by Bank One to the debtor do not, without more, constitute evidence of an improper purpose.

Aside from this, the record reveals only the bald assertions of debtor's attorney to the effect that Bank One was attempting to "shake loose" money from the debtor. These statements, even if viewed together with the conversation and the letter, do not suffice to establish an intent to abuse or harass Hammond.

In the instant case, the initial information provided to Bank One by the debtor indicated that he had $40,000 in credit card debt on twenty-two separate cards, and that he had no net income during the period in which he incurred the approximately $2,000 credit card debt with Bank One. (Tr. p. 39). The Court finds that as a matter of law these facts form a good faith basis for further inquiry pursuant to Rule 2004.

In addition, the bankruptcy court neglected to mention in its decision that Bank One voluntarily offered to significantly limit the scope of its document production request by eliminating requests nos. 1 and 3, by withdrawing its request for any documents from 1988 except for Hammond's tax return from that year, and by agreeing that protection of Hammond's checkbook registers and checks would satisfy request no. 2. Because the bankruptcy court failed to make reference to this fact in its decision, this Court can only conclude that the bankruptcy court did not consider it in applying its balancing test. The failure to do so was an abuse of discretion. This is especially true when it is considered that there is no evidence in the record from which to infer that the cost of complying with Bank One's modified request would have exceeded the amount in controversy in this case.

In any event, there is no evidence to support a finding that Bank One's original request was unduly burdensome or sought irrelevant information. Hammond admitted at the hearing that he could have gathered the requested materials "without a lot of time." (Tr. p. 26). Hence, it cannot be said that even the original request was unduly burdensome. Likewise, Bank One's original request was not unreasonably broad. Bank One's attorney explained the reason for the scope of the original complaint:

Q. Why would you ask for records dating back to January of 1988 when he owed you no money that's at issue in January of 1988 or, indeed, for about a year and a half after that?

A. Because he answered at the 341 meeting that his business had been deteriorating because of the economy, as I recall, and my interest in knowing what was happening in 1988 was to determine if he ever had income that would justify $40,000 in credit card debt.

He certainly, didn't have income in 1989 or 1990 that would support that kind of indebtedness. From the 341 meeting it appeared that—his answer appeared to indicate that he had previously had income that had been diminishing, and I wanted to see if that was accurate.

(Tr. p. 62). In short, Bank One's original request was not unduly burdensome and sought relevant information. There is no evidence to support a finding that Bank One's intent was to abuse, harass, or "shake loose" money from debtors. The bankruptcy court's findings on these matters constitute an abuse of discretion.

After having carefully examined the entire record, this Court "has a definite and firm conviction that the [bankruptcy] court ... committed a clear error of judgment in the conclusion it reached." *McBee v. Bomar*, 296 F.2d 235, 237 (6th Cir.1961).

For the foregoing reasons, the judgment of the bankruptcy court is REVERSED and this matter is REMANDED to the bankruptcy court with instructions to allow Bank One to proceed with the limited 2004 examination it agreed to at the hearing on June 3, 1991. (Tr. pp. 73–74).

It is so ORDERED.