**In re COFFEE CUPBOARD,
INC., Debtor.**

**Bankruptcy Case No. 181–13520–260.**

United States Bankruptcy Court,
E.D. New York.

July 10, 1991.

of under $48,000.

Sherman, Citron & Karasik by Howard Karasik, New York City, David M. Richman, New York City, for debtor.

Jerome Dorfman, Woodbury, N.Y., for Bernard Coven.

Brauner, Baron, Rosenzweig, Kligler, Sparber, Bauman & Klein by Robert Minkoff, New York City, for Chapter 7 Trustee.

## DECISION ON DEBTOR'S MOTION TO VACATE ORDER OF JANUARY 7, 1991 PROVIDING FOR AN EXAMINATION OF THE DEBTOR AND PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004

CONRAD B. DUBERSTEIN, Chief Judge.

Before the Court is the Debtor's motion to vacate this Court's order of January 7, 1991 which provides for an examination of the Debtor and production of documents pursuant to Bankruptcy Rule 2004. For the reasons set forth below the Debtor's motion is granted in part and denied in part.

### FACTS

The long and complex history of this case has been told in the opinion of this Court dated September 4, 1990 and the opinion of Hon. Thomas C. Platt, Jr. of this District Court dated August 9, 1990. Therefore,

only an abbreviated narrative will be given here.

Coffee Cupboard, Inc., (the "Debtor") commenced a voluntary Chapter 11 case on November 16, 1981. Thomas Farley ("Farley") filed a claim in the amount of $2,500 together with a participation in one half of a $22,000 claim filed on behalf of Broder & Farley, a dissolved law partnership in which Farley was a partner, which at one time provided legal services to the Debtor. Bernard Coven ("Coven") filed a claim in the amount of $18,000. Coven also acted as the attorney for the Debtor from time to time and performed legal services for Edward Weiss ("Weiss") the principal of the Debtor. Testimony reflects that the relationship between Mr. Weiss and Messrs. Farley and Coven is highly antagonistic at best.

The Debtor's Chapter 11 plan of reorganization was confirmed on February 13, 1984. It provided, *inter alia,* that its unsecured creditors were to receive 80 percent of their allowed claims over a period of four years. The funds necessary for the payment to creditors were to be generated from the Debtor's operations, and out of funds raised by the Debtor's parent corporation, Allvend Industries, Inc., ("Allvend") by means of a public offering of stock on the open market. At some point in time, Allvend changed its name to KingsOil Co., Ltd. ("KingsOil"). A final decree which recited that the plan was substantially consummated and directing that the estate be closed was entered November 5, 1986.

On March 29, 1989, Farley made a motion pursuant to Bankruptcy Code Sections 350(b) and 1112(b) to reopen the Chapter 11 case, and convert it to one under Chapter 7.

The motion to reopen and convert was based on the grounds that the Debtor had failed to substantially consummate the plan as well as on the grounds of fraud. Farley and Coven rested on two transactions as evidence of fraud committed by the Debtor warranting the reopening and conversion of the Chapter 11 case.

First, they attempted to establish that in June of 1984, about four months after the plan was confirmed, the Debtor conveyed 6,250,000 shares of stock it held in Coffee Hutch, Inc. formerly known as P.L.S. Corporation to Weiss' sons Mitchell and Leonard Weiss. Farley and Coven maintained, and it is a fact, that those stock certificates were not listed in the schedules of assets of the Debtor, nor was the existence or ownership of the stock set forth in the disclosure statement which accompanied the confirmed plan. It was further alleged that the transfer was to have been made in consideration of a certain promissory note for $64,250, which note was subsequently cancelled in exchange for unspecified services rendered by the transferees of the stock. Farley and Coven claimed they only became aware of the transfer of that stock in early 1989 through a prospectus, circulated in 1988, offering shares of stock in a corporation known as Bazaar De La Cuisine Internationale, Inc.

Second, Farley and Coven asserted that the Debtor, in violation of a specific provision of the plan, transferred all or substantially all of its assets before payments under the plan had been completed. They alleged that in January of 1985, the Debtor entered into an agreement with an entity known as Hembley Corporation, later called Holiday House International, Inc. ("Holiday House") providing for the Debtor to turn over to Holiday House its customer accounts, inventories and accounts receivable in exchange for the obligation of Holiday House to assume and discharge the requirement of the Debtor to satisfy the 80% payments due to its creditors as provided for in the Debtor's Chapter 11 plan of reorganization. Holiday House filed a petition for relief under Chapter 11 in this Court on September 26, 1985 which was referred to the undersigned. That case was dismissed on July 12, 1990. The schedules of its liabilities did not list any of the obligations of Coffee Cupboard to its creditors.

On June 27, 1989 during the course of evidentiary hearings, this Court ruled that Farley and Coven could not proceed to present evidence in an effort to establish fraud as grounds to reopen and convert this case. That decision was based on the

fact that Section 1144 of the Bankruptcy Code provides that the Court may only revoke an order of confirmation on the basis of fraud within 180 days of the entry of that order and in this case years had elapsed since the date of confirmation. Nonetheless, this Court did reopen the case and reserved decision on the issue of whether this case should be converted or dismissed on the basis of the Debtor's failure to substantially consummate the plan of reorganization.

Farley appealed that part of the order of June 27, 1989 which held that he and Coven were time barred from moving to reopen this case on the grounds of fraud. Farley argued in his appeal that notwithstanding Section 1144, a court may convert a Chapter 11 case to one under Chapter 7 pursuant to Section 1112(b). That section allows a case to be converted for "cause." Farley argued that "cause" includes a Debtor's concealment of assets during the course of a Chapter 11 case.

Chief Judge Platt in his memorandum decision dated August 9, 1990 held the Section 1112(b) of the code could provide the statutory basis for converting or dismissing a case on the basis of fraud, even though the order of confirmation was more than 180 days old. The case was then remanded back to this Court for further proceedings and examination into the issue of fraud.

Before Judge Platt handed down his decision of August 9, 1990, this Court continued in its efforts to resolve the issue of whether this case should be converted to a case under Chapter 7 or dismissed on the grounds the Debtor failed to substantially consummate the plan. In its decision of September 4, 1990, it held that the Debtor did fail to substantially consummate the plan, that there was a material default by the Debtor in the execution of that plan, that consequently there were grounds to convert this case to one under Chapter 7 or to dismiss it and therefore it was unnecessary to examine into the issue of fraud. The Court went on to hold that in light of Chief Judge Platt's decision and the allegations of fraud made by Farley and Coven, conversion of this case to one under Chapter 7, as opposed to dismissing the case, was appropriate as that would allow for the appointment of a trustee to examine into the alleged fraudulent transactions and enforce whatever remedies there were in favor of the trustee.

Following the conversion of this case, an interim trustee was appointed and a Section 341 meeting was conducted. Subsequently a creditors committee was elected pursuant to Section 705 of the Bankruptcy Code, the members of which are Farley, Coven and Tetley, Inc. by Anthony Onnembo its Credit Manager.

On January 7, 1991, this Court signed an order upon the application of Farley and Coven directing the examination of Weiss, as principal of the Debtor, pursuant to Bankruptcy Rule 2004. The Order also directed the Debtor to produce an extensive amount of documents.[1] The Debtor moved

---

1. The following is the list of documents requested:

1. Documents concerning the sale or offer to sell of [sic] the securities of (a) Bazaar De La Cuisine, Internationale and (b) Cellular Telephone Enterprises, Inc., including private placement memoranda, offering circular(s) and prospecti.

2. Documents filed with the United States Securities and Exchange Commission and the State of New York concerning the sale or offer to sell any of the securities of (a) Bazaar De La Cuisine Internationale, Inc., and (b) Cellular Telephone Enterprises, Inc.

3. Documents concerning the change of name of (a) P.L.S. Corp, (b) Coffee Hutch, Inc. and, (c) Bazaar De La Cuisine, Inc.

4. Legal opinions concerning the Debtor rendered, made given or provided by Roger Rosenberg Esq. to the Debtor, or on behalf of the Debtor to any person.

5. Documents concerning the acquisition or purchase by Leonard Weiss and Mitchell Weiss from the Debtor of the stock of P.L.S. Corp. or of Coffee Hutch, Inc., formerly known as P.L.S. Corp.

6. Promissory notes made by Leonard Weiss and made by Mitchell Weiss to the order of the Debtor.

7. Documents concerning the forgiveness or cancellation of any indebtedness by the Debtor of any debts or obligations owed to the Debtor by Leonard Weiss and Mitchell Weiss.

8. All documents concerning transactions between the Debtor and Edward Weiss.

9. All Documents concerning transactions between the Debtor and KingsOil, formerly known as Allvend.

to quash the subpoena issued by that order.

The trustee has not requested a Rule 2004 examination. This case is a no asset case and there is no money to fund the trustee's investigation into the alleged fraudulent acts. The trustee supports Farley and Coven in their request for an examination of the Debtor and production of documents since that may determine if there is actually any foundation for a recovery arising out of the transfers.

In addition to this Chapter 7, this Court has been advised that actions were commenced in the Supreme Court of the State of New York by Farley or Coven against entities or persons related to the Debtor.

Farley commenced two actions against defendants Promovision Video Displays Corp. ("Promovision") and Edward, Leonard and Mitchell Weiss in the Supreme Court of the State of New York, New York County. In one action Farley is seeking fees owed for legal services performed prior to October 1985. The defendants have interposed an answer and counterclaimed for malpractice and other claims. In the second action Farley claims he is due payment on a series of promissory notes. Issue has also been joined in that case. The posture of those two cases is unknown.

In July 1989 Coven commenced an action against, among others, Weiss for the alleged conversion of stock of KingsOil and Allvend. Again the status of this action is unknown.

## THE ARGUMENTS OF THE PARTIES

In its statement in support of the order directing an examination pursuant to Rule 2004 Farley and Coven contend that an extensive examination of Weiss is necessary. They maintain that hearings before this Court on the motion to convert this case and the decision of this Court granting the motion indicates that the Debtor concealed assets and failed to make payments required by its confirmed plan. They further contend that a Rule 2004 examination of the Debtor is necessary so that an inquiry can be made concerning matters related to the acts, conduct, property, liabilities, and financial condition of the Debtor and any matters which affect the administration of the estate of the Debtor.

In support of the motion to quash the Rule 2004 examination and production of documents, the Debtor submitted that the examination and document request was nothing more than a harassment tactic by the parties who obtained the order. Furthermore that the information sought had already been disclosed in the context of a protracted one year trial before this Court. Moreover, the Debtor alleges the ordered examination allows Farley and Coven to examine Weiss in connection with KingsOil documents, in order that the information

10. All documents concerning any claim filed by the Debtor in the Chapter 11 proceedings of Holiday House Coffee International, Inc.
11. All documents concerning any law suits or proceedings brought by the Debtor or against the Debtor including by way of counterclaim, with reference to Holiday House, Inc.
12. Minute Book and Stock Record Book of Debtor.
13. All financial statements of the Debtor, including consolidated financial statements wherein the Debtor appears as a subsidiary of Allvend Industries, Inc., now known as KingsOil.
14. The following schedules: (a) list of creditors of Debtor, (b) property of the Debtor acquired by the Debtor since the filing of its petition for arrangement pursuant to Chapter 11 but before entry of the conversion order, (c) unpaid debts, including taxes incurred after confirmation in Chapter 11 but before entry of the conversion order and (d) executory contracts and leases entered into or assumed by the Debtor after the filing of its petition for Chapter 11 arrangement but before entry of the conversion order.
15. Bank statements, cancelled checks, checkbook stubs, deposit slips, bank transfers and savings bankbooks of the Debtor.
16. Federal, State and New York City tax returns of the Debtor.
17. Documents concerning payments to employees, officers and directors of the Debtor.
18. Documents concerning the payment by the Debtor of fees and disbursement to any attorney, accountant or other professional, including all bills or invoices rendered to the Debtor by the foregoing persons.
19. All documents concerning the payment by the debtor of fees and disbursements to any attorney, accountant or other professional, including all bills or invoices rendered to the debtor by the foregoing persons.

obtained can be utilized outside this Court in the unrelated state court proceeding.

Finally, the Debtor argues that a Rule 2004 examination in this case is inappropriate as it cannot lead to information relative to the Debtor or property of its estate. The Debtor notes that according to Section 1141, once a Chapter 11 plan of reorganization is confirmed, all property dealt with by the plan vests in the Debtor. Thus, inasmuch as the Chapter 11 plan was confirmed in this case, none of the property of the former Chapter 11 estate has become property of this Chapter 7 estate. Hence, it argues that since this is a no asset estate, no benefit would accrue to anyone if the examination were to go forward.

## DISCUSSION

■■■ The purpose of a Rule 2004 examination is "to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." *Cameron v. United States,* 231 U.S. 710, 717, 34 S.Ct. 244, 246, 58 L.Ed. 448 (1914) (discussing former § 21(a) of the Bankruptcy Act, from which former Bankruptcy Rule 205 and current Rule 2004 are in part derived). The scope of a Rule 2004 examination is very broad and can be in the nature of a fishing expedition. *See Chereton v. United States,* 286 F.2d 409, 413 (6th Cir.1961), *cert. denied,* 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961); *In re Fearn,* 96 B.R. 135, 137 (Bankr.S.D.Ohio 1989); *In re Vantage,* 34 B.R. 650, 651 (Bankr.E.D.N.Y. 1983). Examinations under Rule 2004 may be conducted by any party in interest, not just the trustee. *See In re Summit Corp.,* 891 F.2d 1 (1st Cir.1989).

■■■ Nonetheless, there are important limits to the scope of an examination taken pursuant to Rule 2004. *See In re Cinderella Clothing Industries, Inc.,* 93 B.R. 373 (Bankr.E.D.Pa.1988). A 2004 examination should only be used for the legitimate purpose of obtaining information relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's right to a discharge." Fed.R.Bankr.Pro. 2004. The examination of a witness about matters having no relationship or no effect on the administration of an estate is improper. *In re Johns–Manville, Inc.,* 42 B.R. 362, 364 (S.D.N.Y.1984). Furthermore, like other methods of discovery, Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined. *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 712 (Bankr.S.D.N.Y.1991).

Rule 2004 requires that we balance the compelling interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production. The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents. *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. at 712 (cites omitted).

■■■ In balancing the interests in the instant motion to quash the request for document production and examination of the Debtor, this Court must consider many factors.

First, it must look to the peculiar procedural history of this case and the roles played by Farley and Weiss throughout. The instant Chapter 7 case was once a case under Chapter 11. The Chapter 11 case filed on November 16, 1981, languished in this Court for over two years before a plan of reorganization was confirmed on February 13, 1984. During that time Farley and Coven had ample opportunity to take in depth discovery and obtain information relating to the Debtor's acts, conduct and property. Three years after a final decree was entered on November 5, 1986 Farley and Coven made their motion to reopen this case. In connection with that motion, extensive evidentiary hearings were conducted, over the course of a year, in which Farley and Coven were allowed to examine Weiss and other witnesses and take limited discovery. Furthermore, Farley and Coven

have played an active role in this case since its inception and have previously availed themselves of the liberal discovery rules in order to examine into the property of the Debtor's estate. Moreover, Farley and Coven were both familiar with the operations of the Debtor even before it filed a petition for relief under Chapter 11, as a result of their intermittent representation of the Debtor and/or its principal, Weiss.

Second, this Court converted this case as opposed to dismissing it for the sole purpose of giving a Chapter 7 trustee the opportunity to examine into two transactions which are alleged to be fraudulent and enforce any available remedies. Specifically, the trustee is to investigate the circumstances surrounding the transfer of the P.L.S. Stock by the Debtor to Mitchell and Leonard Weiss, and the transfer of substantially all the Debtor's assets to Holiday House.

Although it is premature to make any determination as to any claim the trustee might bring in the future, it is appropriate to consider the limitations on the trustee's authority to enforce any remedies it might have since a Rule 2004 examination "must be limited to issues which the court, at that time, still has the power to entertain." *In re Cinderella Clothing Industries, Inc.,* 93 B.R. 373, 377 (Bankr.E.D.Pa.1988).

The trustee may be precluded from attempting to recover the P.L.S. stock or the assets transferred to Holiday House because Section 1141 of the Code states, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the Debtor." This section "is derived from Sections 226 and 474 of the Bankruptcy Act which provided that property dealt with by the plan when transferred by the trustee or debtor in possession or retained by the debtor is free and clear of all claims and interests of the debtor, creditors, and shareholders, except as provided in the plan or the order approving the plan." 5 Collier on Bankruptcy 1141.01 at 1141–7 (15th ed. 1991). Once the plan was confirmed in the preceding Chapter 11 case, all property vested in a new entity free and clear of all claims of creditors and the Debtor. Hence, it could be argued that the Chapter 7 estate has no interest in the P.L.S. stock or the property transferred to Holiday House. Furthermore, this Court notes there is no provision in the plan of reorganization which provides a specific remedy for a default in consummating the plan, nor for the transfers which Farley and Coven seek to attack.

However, it is not a foregone conclusion that the trustee will be precluded from enforcing its remedies against the Debtor.

In *In re Hoggarth,* 78 B.R. 1000 (Bankr. D.N.D.1987), a trustee attempted to collect an alleged preferential transfer which occurred while the debtors were operating under the provisions of a confirmed Chapter 11 plan but before conversion from Chapter 11 to Chapter 7. In holding that the preference period commenced on the date of conversion from Chapter 11 to Chapter 7 as against any post-petition transfers of non-plan property to non-plan creditors, it was stated:

A conversion to Chapter 7 does not undo what was by court order achieved by the Chapter 11 confirmation and any payments made under the auspices of a confirmed plan cannot be avoided.... However, the fact of plan confirmation does not leave property unadministered by the plan outside of the trustee's administrative powers nor should it render immune from avoidance actions, transfers to post-petition creditors of post-confirmation property. To so hold would severely deplete the Chapter 7 estate and encourage favoritism of the grossest kind. *In re Hoggarth,* 78 B.R. at 1002.

In this case it could be argued the P.L.S. stock was not property administered by the plan as that stock was not listed as an asset of the Debtor nor was it disposed of under the plan. Furthermore, although the property transferred to Holiday House vested in the Debtor upon confirmation of the plan, the transfer of that property was in violation of the plan. Thus an argument can be made that the stock and the assets transferred to Holiday House are not outside the trustee's administrative power.

Therefore, this Chapter 7 case may have assets and an examination of the Debtor may assist the trustee in recovering those assets. However, considering the history of this case, the parties seeking the examination, the limited purposes for which the case was converted, the actions pending in the State Court involving Farley, Coven and Weiss, and the tenuous legal basis upon which the trustee might commence actions against the Weiss's, this Court is persuaded that there should be some limitations on scope of the Rule 2004 examination and the documents to be produced.

Documents requested in numbers 1 and 2 shall be produced to the extent of documents concerning the securities of Bazaar De La Cuisine Internationale, Inc., but not as to Cellular Telephone Enterprises, Inc. since it does not appear to have been involved in the stock transfer.

Document requests numbered 3, 5, 6, and 7 all appear to be calculated to unearth information regarding the transfer of the P.L.S. stock. Document request number 11 seems reasonably related to the Debtor's transfer of assets to Holiday House. Since this case was converted to allow for a trustee to examine those two transactions those document requests are allowed.

Document requests numbered 8, 13, 14, 15, 16, 17 and 18 are extremely broad in scope and fail to specify a time frame. These document requests are allowed to the extent that the Debtor is only required to produce those documents which relate to the transfer of the P.L.S. stock, the transfer of assets to Holiday House and the acts, conduct or property of the post-confirmation Debtor.

Document request number 4 asks for all "[l]egal opinions concerning the Debtor rendered, made or provided by Roger Rosenberg Esq. to the Debtor...." That document request is too broad considering the facts and circumstances of this case. Hence, the Debtor is only required to produce those opinions, if any, which relate to the transfer of P.L.S. stock, the transfer of the assets to Holiday House, or the acts, conduct or property of the post-confirmation Debtor.

The information requested in document request number 10 can be obtained just as easily by examining the records filed with this Court in connection with the Chapter 11 case filed by Holiday House. Therefore the Debtor need not produce those records.

Document request number 12 is modified so that the Debtor need not produce its stock record book. The stock record book will only reflect the ownership of stock in the Debtor corporation, the ownership of which is not at issue. On the other hand, the minute book may reflect corporate resolutions authorizing the transfer of the P.L.S. stock or the transfer of assets to Holiday House.

■ One final consideration. This Court is cognizant of litigation pending in the Supreme Court State of New York and is concerned that the Rule 2004 examination is being used to obtain information for use in that action. Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal. These examinations "have been likened and countenanced as 'fishing expeditions' and 'inquisitions' where 'procedural safeguards of witnesses are at a minimum.' ... Accordingly, much matters that would be undiscoverable under Fed.R.Civ.P. 30 would be unassailable within the less fettered 'discovery' procedures under Bankruptcy Rule 205 [later Rule 2004]." *Matter of Frigitemp Corp.*, 15 B.R. 263, 264 n. 3 (Bankr.S.D.N.Y.1981) (quoting *Matter of Dupont Walston, Inc.*, 4 B.C.D. 61, 63 (Bankr.S.D.N.Y.1978)). The mere fact that there is pending litigation against a person sought to be examined under Rule 2004 and possible use of such testimony in collateral litigation is not a sufficient reason for denying the examination. *See In re Table Talk, Inc.*, 51 B.R. 143 (Bankr.D.Mass.1985).

In examining the pleadings of the actions commenced in New York State Supreme Court and the request for documents in this case, it appears that the action commenced by Farley against Promovision concerning the payment of certain notes is unrelated to this case and discovery obtained in this case could, in all probability,

only be used tangentially in that case. However, document request number 19 requests "all documents concerning the payment by the debtor of fees and disbursements to any attorney...." That request obviously seeks information which could be used in the action commenced in New York State Supreme Court concerning the nonpayment of legal fees to Farley and does not appear to be calculated to produce any information related to the transfer of the P.L.S. stock or the transfer of assets to Holiday House. Therefore, the Debtor is only required to produce any such documents to the extent they are related to those two transactions.

With respect to the litigation commenced by Coven, this Court notes that there seems to be a connection between the documents requested in this case and the action commenced in New York State Supreme Court. The state court action alleges that certain stock of KingsOil was converted by Mr. Weiss. Document request number 9 asks for "all documents concerning transactions between the Debtor and KingsOil, formerly known as Allvend." Considering the narrow purpose for which this case was converted, it appears the request is for information that could serve no useful purpose here. Although it is true Allvend failed to satisfy its commitment to the Debtor to finance a public offering of stock to fund the Debtor's plan of reorganization, that fact is not contested, and no other allegations were raised concerning Allvend. Hence this court must conclude that the above request could only be used in connection with the state court litigation and will not order its production except to the extent any such documents are related to the transfer of P.L.S. stock or the transfer of assets to Holiday House.

### CONCLUSIONS

1. This court has jurisdiction over the this motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a) and (b)(2)(A) as it is a core proceeding concerning the administration of the estate.

2. The Debtor's motion to vacate this Court's order of January 7, 1991 which provides for an examination of the Debtor and production of documents pursuant to Bankruptcy Rule 2004 is denied in part and granted in part as hereinafter set forth.

3. Document requests numbered 1 and 2 are allowed to the extent they require the Debtor to produce documents concerning Bazaar De La Cuisine Internationale.

4. Document requests numbered 3, 5, 6, 7 and 11 are allowed.

5. Document requests numbered 4, 8, 9, 13, 14, 15, 16, 17, 18 and 19 are allowed only to the extent the documents requested relate to the transfer of the P.L.S. stock, the transfer of assets to Holiday House or the acts, conduct or property of the post-confirmation Debtor.

6. Weiss, as principal of the Debtor, shall provide oral testimony relating to the foregoing documents which are directed to be produced.

7. SUBMIT ORDER CONSISTENT WITH THIS DECISION.