In re David A. LUFKIN, a/k/a David A. Lufkin, Attorney, Debtor.

Bankruptcy No. 00–32361.

United States Bankruptcy Court, E.D. Tennessee.

Oct. 17, 2000.

John P. Newton, Jr., Cynthia T. Lawson, McGehee, Newton & Wykoff, P.C., James A.H. Bell, James A.H. Bell, P.C., Knoxville, TN, for Debtor.

F. Scott Milligan, Little & Milligan, P.L.L.C., Knoxville, TN, for William T. Hendon, Trustee.

### MEMORANDUM ON DEBTOR'S MOTION TO LIMIT SCOPE OF RULE 2004 EXAMINATIONS

RICHARD S. STAIR, Jr., Chief Judge.

This case was commenced by the filing of an Involuntary Petition under Chapter 7 against David A. Lufkin, an attorney, on June 14, 2000. The Order for Relief was entered against the Debtor by default on July 13, 2000. The Debtor filed his Schedules and Statement of Financial Affairs on August 11, 2000. In his Statement of Financial Affairs, businesses listed by the Debtor in which he has an interest include David A. Lufkin, PC, and Lufkin, Henley & Conner, PLLC (collectively "the Law Firms").

On August 8, 2000, the court, on motion of the Chapter 7 Trustee, William T. Hendon, entered an Order Authorizing Rule

2004 Examinations, which permits the Trustee's examination of two non-debtor parties and issuance of subpoenas duces tecum. On September 7, 2000, the Debtor filed a Motion to Limit Scope of Rule 2004 Examinations and Subpoena Ducus [sic] Tecums [sic] and for an Expidited [sic] Hearing on the Motion ("Motion"), raising a number of constitutional objections. The Trustee and Debtor each filed a brief in support of their respective positions and a hearing was held on October 10, 2000. The record before the court consists of nine exhibits, all of which were stipulated into evidence by the parties.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) (West 1993).

## I

Prior to the commencement of this case, several relevant proceedings took place in state court. A brief summary of those proceedings will be helpful in considering the issues currently before the court.

On December 16, 1999, at the Debtor's request, the Tennessee Supreme Court transferred the Debtor's law license to disability inactive status, pursuant to Rule 9, § 21 of the Tennessee Supreme Court Rules. On December 17, 1999, the Knoxville Bar Association filed a Petition for Appointment of Attorney Pursuant to Supreme Court Rule 9 in the Chancery Court for Knox County, Tennessee, against the Debtor and his law firm, designated as "Lufkin, Henley and Conner," requesting the appointment of an attorney to inventory the files of the Debtor. On December 17, 1999, Lawrence F. Giordano was appointed by the Chancery Court as attorney to take possession of and inventory the Debtor's files. On December 22, 1999, the Knoxville Bar Association filed an Amendment to Petition for Appointment of Attorney Pursuant to Supreme Court Rule 9 to add David A. Lufkin, P.C., and Lufkin, Henley & Conner, PLLC, as respondents.

The Chancellor approved the amendment by an Order entered the same day. Thereafter, on January 5, 2000, citing the heavy caseload of the "Lufkin practice entities," the Chancery Court appointed Robert M. Bailey ("the Receiver") as Receiver of the Debtor and the Law Firms. The Receiver was directed "to take into possession the property of the law practice entities which are called David A. Lufkin, David A. Lufkin, PC, and Lufkin, Henley, and Conner, PLLC" and was assigned the responsibility of overseeing their administration and operation. Neither the Debtor nor the Law Firms, who were represented by counsel, objected to either the appointment or the powers of the Receiver.

On January 14, 2000, General Revenue Corporation (GRC), a creditor, moved the Chancery Court to order the Debtor and the Law Firms to produce billing ledger cards relating to GRC's accounts with the Debtor and the Law Firms. The Receiver on March 10, 2000, filed a Petition for Instructions seeking guidance from the Chancellor concerning the requests of federal and state investigative agencies for the production of the records of the Debtor and the Law Firms. In response to the Petition for Instructions, the Debtor asserted his rights under the First, Fourth, Fifth, Sixth, and Eighth Amendments of the United States Constitution and similar provisions of the Tennessee Constitution. The Chancery Court, in an Order entered on April 10, 2000, denied GRC's request without explanation.[1] The record before this court does not show a final disposition of the Receiver's Petition for Instructions.

Lastly, on May 30, 2000, the Debtor filed a motion in Chancery Court seeking dissolution of the receivership. That court declined to rule on the motion absent an order from this court granting relief from the automatic stay. No motion seeking stay relief has been filed.

---

1. Specifically, the Chancellor's Order states only that "[b]ecause of the objections raised by Mr. Lufkin, the Court OVERRULES GRC's Motion for the production of the ledger cards."

## II

On Schedule B, the Debtor lists stock in the Law Firms valued at $3,000,000.00. He also lists, on Schedule B, a potential lawsuit against the Receiver for failure to account for receipt of the Law Firms' funds. On Schedule F, the Debtor cites numerous debts of the Law Firms for which he is potentially liable as a guarantor. On an Attachment to Schedule F, he states that there may be additional creditors related to the Law Firms, but that he "does not have access to the records to enable him to provide information at this time."

On August 2, 2000, the Trustee filed a Motion for Rule 2004 Examinations requesting an order authorizing him to examine the Receiver and Mary Trowbridge and that subpoenas duces tecum issue "for production of documents of David A. Lufkin, P.C., and Lufkin, Henley & Conner, P.L.L.C." The court's August 8, 2000 Order Authorizing Rule 2004 Examinations permits examination of the Receiver and Mary Trowbridge, a former employee of Lufkin, Henley & Conner, PLLC. The Order further authorizes issuance of subpoenas duces tecum "for the production of records of David A. Lufkin, P.C. and the firm of Lufkin, Henley & Conner, P.L.L.C."

In his Motion, the Debtor states that "[t]he activities, assets and debts of the [Law Firms] are not relevant to the administration or discharge" of the estate. He asks that the scope of the Rule 2004 examinations and the subpoenas duces tecum be limited to the "acts, conduct or property of the individual debtor, the administration of his [sic] individual debtor's estate and the individual debtor's right to a discharge." Also, the Debtor seeks an injunction "prohibiting the production of documents, records, testimony and information" that would violate his rights under the Fourth, Fifth, or Sixth Amendments of the United States Constitution and similar provisions of the Tennessee Constitution. Appended to the Motion is an Affidavit of David A. Lufkin in which the Debtor states: "Upon counsels' advice, I invoke my rights due under the United States and Tennessee Constitutions and assert the privileges under the 4th, 5th and 6th Amendments."

## III

Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that "[o]n the motion of any party in interest, the court may order the examination of any entity." FED. R. BANKR. P.2004(a). The purpose of a Rule 2004 examination is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors. *See Longo v. McLaren (In re McLaren)*, 158 B.R. 655 (N.D.Ohio 1992). The scope of a Rule 2004 examination is extremely broad and has often been likened to a lawful "fishing expedition." *See, e.g., Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D.Ohio 1992). Rule 2004 may be used to search for assets which have been intentionally or unintentionally concealed. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr.N.D.N.Y.1996).

A handful of decisions have considered the allowable scope of a Rule 2004 examination where related civil or criminal proceedings are taking place or are likely to occur in another court. The general rule in these cases is that the existence of, or potential for, collateral litigation is insufficient reason to deny examination. *See, e.g., In re Coffee Cupboard, Inc.*, 128 B.R. 509 (Bankr.E.D.N.Y.1991). Where the primary purpose is to benefit the bankruptcy estate, "the fact that [examination] may also produce information which in turn may collaterally be used by third parties in separate litigation outside of the bankruptcy case [ ] is no reason to restrict its use or to shield parties ... from such possible litigation." *In re Mittco, Inc.*, 44 B.R. 35, 38 (Bankr.E.D.Wis.1984). However, Rule 2004 examinations should not be designed to discover information for use

in an unrelated case or proceeding. *See Coffee Cupboard,* 128 B.R. at 516.

■ Therefore, while the scope of Rule 2004 is broad, the rule cannot be used to harass, abuse, or inquire into irrelevant matters, and examinations should not be overly disruptive or costly. *See In re Fearn,* 96 B.R. 135 (Bankr.S.D.Ohio 1989). The proper scope is set forth in Rule 2004(b), which provides in material part:

> The examination of an entity under this rule ... may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

FED. R. BANKR. P.2004(b).

■ In his Motion for Rule 2004 Examinations, the Trustee's stated purposes are to discover assets and preferential disbursements. A subpoena duces tecum served on the Receiver on August 16, 2000, directs that the Receiver "[p]roduce the following documents and/or records (unless otherwise specified, this requests [sic] applies to documents and/or records of David A. Lufkin, David A. Lufkin, Attorney, David A. Lufkin, P.C., and/or Lufkin, Hunley [sic] & Conner, P.L.L.C.,):

1. Financial Statements, including profit and loss statements, income statements, balance sheets, inventory lists, and any other financial information or asset listing.

2. Tax Returns from 1995—present.

3. Bank Records, including periodic statements, cancelled checks, check registers, signature cards, account agreements, and any other documents for any operating, checking, savings, or trust account, certificates of deposit, or otherwise.

4. Brokerage or Stock Account Records, including the items listed in No. 3 above.

5. Corporate Records, including charters, articles of organization, bylaws, operating agreements, meeting minutes, corporate resolutions, operating reports, shareholders agreements, stock certificates, stock registries, and all other corporate documents.

6. Documents of title evidencing ownership interests (or equitable interest) in real or personal property.

7. Client Account Records, including receipt and disbursement records, ledger cards, deposit records, and other accounting information pertaining to receipts and disbursements, including disbursements to attorneys.

8. Credit Card Records.

9[.] Insurance Policies and Payments Records, including policy records, beneficiary documents, receipts, payment/premium statements, agent documents, statements of dividends or cash value also including any documents relating to annuity or disability policies.

10. Records of Debts and/or Creditors.

11. Computer files/disks/records and printouts of accounting, financial, assets, inventory, banking, or other information relating to the debtor or the firms or persons indicated above."

■ The Debtor has scheduled assets and liabilities relating to the Law Firms. Such "property and liabilities of the Debtor" are within the scope of Rule 2004(b). Third parties having knowledge of a debtor's affairs are subject to Rule 2004 examination. *See Fearn,* 96 B.R. at 138. Examination of the Receiver and Ms. Trowbridge, as well as inspection of the Law Firms' documents relevant to the property and liabilities of the Debtor, is therefore proper.

**IV**

■ In his Motion, the Debtor invokes his Fifth Amendment rights "relating to the release of documents, records, or related information." The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Fifth Amendment rights may

be invoked in a bankruptcy proceeding. *See McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924).

■■■■ The privilege against self-incrimination is wholly personal and "cannot be utilized by or on behalf of any organization, such as a corporation." *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). It applies only to situations in which an individual "is compelled to make a *testimonial* communication that is incriminating." *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976) (emphasis in original). The Fifth Amendment privilege "ceases on a transfer of the control and possession which takes place by legal proceedings and in pursuance of the rights of others, even though such transfer may bring the property into the ownership or control of one properly subject to subpoena duces tecum." *In re Fuller*, 262 U.S. 91, 43 S.Ct. 496, 497, 67 L.Ed. 881 (1923). The Supreme Court has further stated that the right of a debtor "to protest against the use of his books and papers relating to his business as evidence against him ceases as soon as his possession and control over them pass from him by the order directing their delivery into the hands of the receiver and into the custody of the court." *Dier v. Banton*, 262 U.S. 147, 43 S.Ct. 533, 534, 67 L.Ed. 915 (1923). The Fifth Amendment privilege "adheres basically to the person, not to information that may incriminate him." *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973).

■■■■ In the present case, the subpoena duces tecum is addressed to the Receiver rather than the Debtor. The Receiver is the party lawfully in possession and control of the records of the Debtor and the Law Firms. *See Dier*, 43 S.Ct. 533–34. The Debtor is not being compelled to make a testimonial communication and therefore has no Fifth Amendment shield against the Receiver's production of documents. *See id.* (citing *Johnson v. United States*, 228 U.S. 457, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913) ("A party is privileged from producing the evidence, but not from its production.")).

## V

The Debtor also invokes his Fourth Amendment rights "relating to the release of documents, records, or related information." The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Amendment's protection of "houses" has long been extended to commercial premises, including office contents. *See Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 2123–24, 20 L.Ed.2d 1154 (1968).

The Debtor asserts that the Trustee's examination of the Law Firms' documents would violate "his Fourth Amendment right against unreasonable search and seizure." The Debtor, however, makes minimal effort to explain how such a violation would occur and cites no authority in support of his position. The court will nonetheless address this constitutional issue.

■■■■ A debtor need not have ownership or possession of documents in order to assert Fourth Amendment rights. *See United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976). A court "must examine the nature of the particular documents sought to be protected in order to determine whether there is a legitimate 'expectation of privacy' concerning their contents." *Id.* The Fourth Amendment protects property interests as well as privacy interests. *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 113 S.Ct. 538, 544, 121 L.Ed.2d 450 (1992).

A seizure occurs where there is "some meaningful interference with an individual's possessory interests," *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984), and a search takes place if there is an intrusion upon a reasonable expectation of privacy. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). Fourth Amendment issues arise most frequently in criminal prosecutions, but it can also apply to non-criminal investigations by administrative officials. *See Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

The court is not aware of previous case law directly applying the Fourth Amendment in the context of a Rule 2004 examination. The closest case appears to be the recent decision of *Taunt v. Barman (In re Barman),* 252 B.R. 403 (Bankr.E.D.Mich. 2000). In *Barman,* the debtor challenged, on Fourth Amendment grounds, the trustee's search of the debtor's residence.

The *Barman* court began its analysis by noting that the Fourth Amendment protects only against governmental conduct and not against the actions of private parties. *See id.* at 411. Following a thorough analysis, the court concluded that the amendment applies to the actions of a bankruptcy trustee, as the trustee's conduct is sufficiently attributable to the government. *See id.* at 411–13; *see also Norwood v. Crabtree (In re Crabtree),* 37 B.R. 426 (Bankr.E.D.Tenn.1984) (recognizing that the debtor's Fourth Amendment rights were implicated by the trustee's redirection of his mail); *In re Benny,* 29 B.R. 754 (N.D.Cal.1983) (same).

The court also determined that the debtor had a reasonable expectation of privacy in his residence. *See id.* at 413–15. As such, the issue of whether the debtor's

Fourth Amendment rights had been violated would be decided by whether the search of his residence was "reasonable." *See id.* at 413. In determining the reasonableness [2] of the trustee's inspection, the court balanced the interests of the trustee and the public against the privacy interests of the debtor. *See id.* at 416–18.

Looking first to the interests of the trustee and the public, the court initially noted that the trustee may need to conduct inspections to locate property of the estate. *See id.* at 416; *see also* 11 U.S.C.A. § 704(1) ("The trustee shall collect . . . the property of the estate . . . [.]"), (4) ("The trustee shall investigate the financial affairs of the debtor[.]") (West 1993). As the bankruptcy process relies upon a full disclosure of each debtor's assets, the court stated that such inspections "may be a crucial part of the process and therefore a matter of substantial need." *Barman,* 252 B.R. at 417. The court further noted a strong public interest in the full investigation of each debtor's assets. *See id.* These interests were then balanced against, and found to outweigh, the debtor's interests in privacy and loss of personal dignity. *See id.* at 417–18.

This court is not convinced that a "search" will occur via the Receiver's production of the subpoenaed records. *See, e.g., United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980) (no reasonable expectation of privacy in loan application turned over to bank); *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (no reasonable expectation of privacy in business records turned over to accountant). Even assuming, however, that the Debtor has a recognizable privacy interest in the documents in the Receiver's possession, the

---

**2.** The District Court for the Southern District of New York has set forth factors to be considered in determining the reasonableness of a subpoena in the civil litigation context: "Encompassed under the rubric of reasonableness are such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *United States v. International Bus. Machs. Corp.,* 83 F.R.D. 97, 104 (S.D.N.Y.1979).

Trustee's "search" is reasonable and within the bounds of the Fourth Amendment. The Trustee is acting within his statutory authority and upon the court's permission. The interests of the trustee and the public noted in *Barman* are equally applicable to this case, and they outweigh any privacy interests of the Debtor. *See Barman,* 252 B.R. at 414 (A debtor's "reduced expectation of privacy is a natural consequence of the substantial and detailed disclosures that are inherent in the bankruptcy process.").

## VI

The Debtor also contends that the release of the Law Firms' documents to the Trustee would violate "his Sixth Amendment right of effective assistance of counsel." As with his Fourth Amendment assertion, the Debtor makes minimal effort to explain how this violation would occur and cites no authority supporting his position.

■■■ The Sixth Amendment assures, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. It is well settled that this right attaches "only at or after the initiation of adversary judicial proceedings" against a criminal defendant, such as a formal charge, preliminary hearing, indictment, information or arraignment. *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984) (citing *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)); *see also United States v. Moody,* 206 F.3d 609, 613–15 (6th Cir.), *cert. denied,* — U.S. —, 121 S.Ct. 301, 148 L.Ed.2d 241 (2000) (adhering to *Kirby's* "bright line test"). "[B]efore proceedings are initiated a suspect in a criminal investigation has no constitutional right to the

assistance of counsel." *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994).

■■■ By its terms, the protections of the Sixth Amendment are restricted to criminal proceedings. The Trustee's Rule 2004 subpoenas and examinations, within their proper stated scope and purpose, do not constitute a criminal proceeding. Therefore, the court finds no Sixth Amendment interests warranting prohibition of the release of the Law Firms' documents to the Trustee.

■■ There is, however, one other issue the court must address. The subpoena duces tecum served by the Trustee on the Receiver on August 16, 2000, is too broad. It compels the Receiver to produce records not only of the Law Firms, but also of "David A. Lufkin [and] David A. Lufkin, Attorney." In his Motion for Rule 2004 Examinations, the Trustee requested the issuance of subpoenas duces tecum requiring the production of records of "David A. Lufkin, P.C., and Lufkin, Henley & Conner, P.L.L.C." He did not request, nor does the court's August 8, 2000 Order Authorizing Rule 2004 Examinations direct, the issuance of subpoenas duces tecum requiring the production of documents of the Debtor or of any entity other than the Law Firms.[3] The August 16, 2000 subpoena duces tecum will accordingly be quashed, without prejudice to the Trustee's right to the issuance of another subpoena duces tecum directed exclusively to the production of documents of the Law Firms.

## VII

In summary, the court concludes that the Debtor's constitutional arguments are without merit. The court further concludes that the Trustee's stated purposes

---

**3.** The court recognizes that the Law Firms' records may include documents of the Debtor which the Receiver will be required to produce. That is the reason the court has addressed the constitutional issues raised by the Debtor. Nonetheless, the subpoena duces tecum served on the Receiver on August 16, 2000, is overly broad because it exceeds the scope of the subpoena duces tecum requested by the Trustee and authorized by the court.

for examination of the Law Firms' records are well within the broad scope of Rule 2004. Accordingly, the Debtor's Motion will be denied. The court will nonetheless quash the subpoena duces tecum served on the Receiver on August 16, 2000, as overly broad, without prejudice to the Trustee's right to obtain the issuance of another subpoena in a manner consistent with the court's August 8, 2000 Order Authorizing Rule 2004 Examinations. An appropriate order will be entered.

## *MEMORANDUM ON DEBTOR'S MOTION TO ALTER OR AMEND JUDGMENT*

On October 27, 2000, the Debtor filed a Motion to Rehear by Debtor and to Reconsider, Alter or Amend Order Entered October 17, 2000 ("Motion"). By this Motion, the Debtor seeks to alter or amend the court's October 17, 2000 Order denying his Motion to Limit Scope of Rule 2004 Examinations and Subpoena Ducus [sic] Tecums [sic] and for an Expidited [sic] Hearing filed on September 7, 2000, to include a protective order limiting the Trustee's release of documents obtained by subpoena from Robert M. Bailey, Receiver ("the Receiver"). The Trustee, on October 31, 2000, filed a Response of Trustee to Debtor's Motions to Quash and to Reconsider.[1]

### I

The factual background of this contested matter is set forth in the court's October 17, 2000 Memorandum on Debtor's Motion to Limit Scope of Rule 2004 Examinations and will be summarized only briefly herein. On January 5, 2000, Robert M. Bailey was appointed Receiver by the Chancery Court for Knox County, Tennessee, and directed to "take into possession the property of the law practice entities" of the

Debtor and to oversee their administration and operation. Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Trustee subpoenaed the records of those businesses from the Receiver on August 16, 2000. On September 7, 2000, the Debtor filed a Motion to Limit Scope of Rule 2004 Examinations and Subpoena Ducus [sic] Tecums [sic] and for an Expidited [sic] Hearing on the Motion, objecting to the document release on state and federal constitutional grounds. In its October 17, 2000 Memorandum, the court ruled against the Debtor's constitutional objections, in part due to the broad scope of authority granted by Rule 2004.[2]

### II

There is evidence that law enforcement officials and at least one creditor seek access to the same documents subpoenaed by the Trustee. In fact, the Debtor argues that the subpoena is to some degree a subterfuge to grant government officers warrantless access to the Debtor's business records. He accordingly asks the court, pursuant to the equitable powers conferred by 11 U.S.C.A. § 105(a) (West 1993), to issue a protective order limiting the Trustee's release of documents or records to third parties. This section of the Bankruptcy Code allows the court to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C.A. § 105(a). Section 105 "preserves the equity powers of a bankruptcy court." *Palmer v. United States (In re Palmer)*, 219 F.3d 580, 582 n. 2 (6th Cir.2000). Actions authorized by § 105 include the issuance of protective orders. *See Askew v. Channel (In re Askew)*, 61 B.R. 87 (Bankr.S.D.Ohio 1986).

---

**1.** The Trustee's response encompasses a second motion filed by the Debtor on October 27, 2000, a Motion to Quash Subpoena Duces Tecum and/or for a Protective Order and Request for an Expedited Hearing, which will be disposed of by a separate order.

**2.** Notwithstanding that the court ruled against the Debtor, it quashed the subpoena duces tecum served on the Receiver by the Trustee as overly broad. A new subpoena has not been issued.

## III

The court's October 17, 2000 Memorandum acknowledged the broad scope of Rule 2004 and noted that the Trustee was acting within his statutory authority and upon the court's permission in subpoenaing business records in possession of the Receiver. Therefore, the court held that the Trustee's interest in obtaining the documents outweighed any Fourth Amendment concerns of the Debtor. The court did not extend its analysis to include any party other than the Trustee. Whether a different result would prevail if a party other than the Trustee sought to subpoena the disputed records is problematic.

The parties are therefore reminded that the court's October 17, 2000 Order permits the transfer of documents only from the Receiver to the Trustee. The Trustee will not be authorized to allow any third party access to any documents or records obtained from the Receiver without prior approval of the court or in response to a search warrant or subpoena issued by a state or federal court. The Debtor's Motion will be granted and the court's October 17, 2000 Order will be amended accordingly.